**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARQUAISA DENISE MCCLENDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00895 |
| | § | |
| AMERICAN EQUITY FUNDING, INC. DBA | § | With Jury Demand Endorsed |
| AEF SERVICING TRUST, | § | |
| | | |
| Defendant. | | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Marquaisa Denise McClendon ("Plaintiff"), by and through counsel, and for her Complaint against Defendant American Equity Funding, Inc. dba AEF Servicing Trust ("Defendant" or "AEF"), states as follows:

### I. INTRODUCTION

1.     Plaintiff claims Defendant engaged in willful, knowing, and malicious actions against her in furtherance of its efforts to collect debt she did not owe, as her personal liability for such debt had previously been discharged in her bankruptcy and the real property held as collateral surrendered.  Defendant's actions against Plaintiff at issue are part of Defendant's policies, practices and procedures, to profit financially by harming and taking advantage of unsophisticated discharged consumer debtors.

2.     Plaintiff asserts claims against Defendant for violating: 1) the Tex. Fin. Code § 392.001 *et. seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) the common law tort of invasion of privacy; 3) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq*., (known

as the Fair Credit Reporting Act, "FCRA"); and 4) the discharge injunction of the United States Bankruptcy Court of the Eastern District of Texas, Sherman Division.

## II. PARTIES

3.      Plaintiff is a natural person residing in Dallas County, Texas and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c); and the TDCA, Tex. Fin. Code § 392.001(1).

4.      Defendant American Equity Funding dba AEF Servicing Trust is a foreign corporation which may be served by delivering citation to its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4234.

5.      Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined under the FCRA, 15 U.S.C. § 1681a(b), and a "creditor," "debt collector" and/or "third-party debt collector," under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

6.      The debt at issue that Defendant was attempting to collect from Plaintiff was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

7.      Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRAs").

## III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 15 U.S.C. § 1681p.

9.      Venue in this district is proper because Defendant transacts business in this district, Plaintiff filed her subject bankruptcy case in this district and the conduct complained of occurred in this district.

## IV.  FACTUAL ALLEGATIONS

**A.     The Debt for the Subject Loan was Included in Plaintiff's Bankruptcy Case.**

10.     Defendant asserted a pre-petition claim against Plaintiff which was secured by real property she owned located at 5201 E 41st Terrace in Kansas City, Jackson County, Missouri 64130 (the "Property").  The account at issue required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof, and the same were primarily for personal, family, or household purposes.

11.     On November 30, 2016, Plaintiff filed for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code in case number 16-42154 ("Bankruptcy Case") in the United States Bankruptcy Court of the Eastern District of Texas, Sherman Division ("Bankruptcy Court").

12.     On Schedule "D" of Plaintiff's bankruptcy schedules, she listed a debt secured by the Property to American Equity Funding, which was owned by Midwest States Properties, LLC and being serviced by Defendant, with an account number ending in 19RC (the "Account").

13.     A true and correct copy of relevant excerpts from Plaintiff's Schedule D is attached hereto as Exhibit "A."

14.     In the Mailing Matrix Plaintiff filed with her bankruptcy petition, Plaintiff listed Defendant AEF as a creditor and provided Defendant's correct address for notice.

15.     Included with her bankruptcy petition, Plaintiff filed her Official Form 108, Statement of Intention for Individuals Filing Under Chapter 7 ("Statement of Intention"), in which she indicated she was surrendering the Property securing the debt on the Account, which she had permanently vacated prior to filing.

16.     A true and correct copy of Plaintiff's Statement of Intention is attached hereto as Exhibit "B."

17.     On or about December 3, 2016, the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") for the Bankruptcy Case by electronic transmission to Defendant; this constituted notice to Defendant of the Bankruptcy Case.  The 341 Notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.  The United States Postal Service did not return the 341 Notice sent to Defendant, so there is a presumption it was received.

18.     A true and correct redacted copy of the 341 Notice is attached hereto as Exhibit "C."

**B.     Plaintiff's Personal Liability for the Account was Discharged in Her Bankruptcy Case.**

19.     On March 8, 2017, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge") (the said order followed Official Form B18, including the explanatory language contained therein).  The order discharged Plaintiff from any liability for the subject pre-petition claim.   Included with the Discharge Order was an explanation of the general injunction prohibiting those holding pre-petition claims from attempting to collect them.  The Discharge Order and its notice warned all creditors in conspicuous language that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally   Creditors who violate this order can be required to pay debtors damages and attorney's fees."

20.     On March 10, 2017 the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendant by U.S. First Class Mail, constituting notice to Defendant about the discharge being granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).  The copy of the Discharge Order sent to Defendant was not returned, so there is a presumption it was received.

21.     A true and correct redacted copy of the Discharge Order as mailed by the Bankruptcy Noticing Center is attached hereto as Exhibit "D" and incorporated herein by reference.

22.     At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity object to or dispute the details of the subject claim on the Account contained in Schedule "D" of Plaintiff's bankruptcy petition.

23.     At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity object to or dispute the details of the subject claim listed on Schedule "D" of Plaintiff's bankruptcy petition.

24.     At no time during the pendency of Plaintiff's Bankruptcy Case did the Bankruptcy Court declare or hold that the subject Account was non-dischargeable.

25.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject Account with any person or entity.

**C.     Post-Discharge, Defendant Attempted to Collect the Debt on the Account from Plaintiff by Making Harassing and Offensive Contacts with Her and Through Deceptive and Coercive Actions.**

26.     When the Bankruptcy Court granted Plaintiff a discharge, the Account legally became uncollectible such that there was no longer any payment owing.   Nevertheless, Defendant engaged in prohibited, coercive, deceptive, and harassing actions against Plaintiff in furtherance of Defendant's illegal debt collection activity, including:

- Sending Plaintiff at least: forty-eight (48) billing statements demanding payment, misrepresenting information to coerce or deceive Plaintiff into paying Defendant the discharged debt on the Account(s) or to coerce Plaintiff to take actions to benefit Defendant financially;

- Impermissibly accessing Plaintiff's confidential credit file with TransUnion and obtaining and using Plaintiff's consumer report(s) on at least two (2) occasions; and

- Calling and texting Plaintiff many times to urge and coerce her to take steps to pay on the Account or take actions that would benefit Defendant financially related to the discharged Account(s).

Further details about Defendant's actions at issue are listed below.

    **1)**    **After the Discharge of the Debt, Defendant Sent Plaintiff at Least 48 Billing Statements on the Account and other Correspondence in Furtherance of its Attempts to Harass, Coerce or Deceive Plaintiff into Paying the Discharged Debt.**

27.    For example, on or about May 15, 2020, Defendant sent Plaintiff a Mortgage Statement together with a payment coupon that instructed "Return this portion with your payment."   The statement represented that $8,423.57 was due by 6/15/20 and advised "Late Fee: $50.00 after 10 days," even though the debt had been discharged, the Property surrendered, and Plaintiff had advised Defendant many times that she had surrendered the Property held as collateral, had no interest in foreclosure alternatives, and did not want to be contacted in the future by Defendant.

28.    A true and correct redacted copy of the May 15, 2020 statement is attached hereto as Exhibit "E."

29.    In June 2020, Defendant contacted Plaintiff and sent her an assumption packet asking her to sign the Property over to an individual named Dorothy Ruiz who was living in the Property, and execute an Assumption Agreement that provided for Ms. Ruiz to assume the Note. Plaintiff was shocked to be contacted by the Defendant long after she had gone through bankruptcy and refused the request.   She reminded the Defendant that she had surrendered the Property in 2016, filed bankruptcy and that they should not be contacting her since the debt had been discharged.

30.    A true and correct redacted copy of the assumption packet is attached hereto as Exhibit "F."

31.     On or about September 10, 2020, Defendant sent Plaintiff a Mortgage Statement together with a payment coupon that instructed "Return this portion with your payment."   The statement represented that $8,783.31 was due by 9/15/20 and advised "Late Fee: $50.00 after 10 days," even though the debt had been discharged, the Property surrendered, and Plaintiff had advised Defendant many times that she had surrendered the Property held as collateral, had no interest in foreclosure alternatives, and did not want to be contacted in the future by Defendant.

32.     A true and correct redacted copy of the September 10, 2020 statement is attached hereto as Exhibit "G."

33.     On or about October 12, 2020, Defendant sent Plaintiff a Mortgage Statement together with a payment coupon that instructed "Return this portion with your payment."   The statement represented that $8,823.05 was due by 10/15/20 and advised "Late Fee: $50.00 after 10 days," even though the debt had been discharged, the Property surrendered in 2016, and Plaintiff had advised Defendant many times that she had surrendered the Property held as collateral, had no interest in foreclosure alternatives, and did not want to be contacted in the future by Defendant.

34.     A true and correct redacted copy of the October 12, 2020 statement is attached hereto as Exhibit "H."

**2)     Post-Discharge Defendant sent Plaintiff Text Massages and Collection Calls to Plaintiff.**

35.     On September 14, 2020 at 4:51 p.m., Defendant sent Plaintiff a text message on her cell phone as follows: "This is Torrie from American Equity Funding.   Please give me a call at 800-874-2389, I need to speak to you about the violations on the house.   Thank you very much."

36.     On September 16, 2020 at 3:58 p.m., Defendant sent another text message to Plaintiff as follows: "This is Torrie from American Equity Funding.  Please give me a call at 800-874-2389.  I need to get your attorney's info so I can give it to our attorney.  We can't wait any further.  Thank you very much."

37.     A true and correct copy of the screenshot showing the text messages is attached hereto as Exhibit "I."

### 3)     Post-Discharge, Defendant Impermissibly Obtained and Used Plaintiff's Consumer Report from TransUnion.

38.     Despite the change in the legal status of the Account as a result of Plaintiff's bankruptcy discharge, which made the debt uncollectible and the balance due and owing zero (-0-), Defendant impermissibly obtained and used Plaintiff's consumer reports from the CRA(s).

39.     August 8, 2019, Defendant impermissibly accessed Plaintiff's confidential credit file from TransUnion and obtained and used her TransUnion consumer report without a legal purpose.

40.     September 18, 2020, Defendant impermissibly accessed Plaintiff's confidential credit file from TransUnion and obtained and used her TransUnion consumer report without a legal purpose.

41.     True and correct redacted excerpts of the relevant portions of Plaintiff's TransUnion credit report, reported on October 12, 2020, showing Defendant's impermissible account reviews which resulted in Defendant accessing Plaintiff's credit file and obtaining and using Plaintiff's consumer report are attached hereto as Exhibit "J."

42.     In order to impermissibly obtain and use Plaintiff's TransUnion consumer report and Plaintiff's personal and confidential information contained therein, Defendant furnished false information to TransUnion, misrepresenting it had a legally permissible purpose to conduct

account review inquiries on the Account post-discharge and access and review Plaintiff's credit file to obtain her consumer reports from TransUnion.   Defendant's alleged permissible purpose was to insure or monitor the Account(s) which were purportedly open, due, owing and collectible from Plaintiff post-discharge.   This was false because the debt on the Accounts was legally uncollectible from Plaintiff once the debt was discharged in Plaintiff's Bankruptcy Case.

## V.   Grounds for Relief - Count I

### Fair Credit Reporting Act (FCRA 15 U.S.C. § 1681 *et. seq*)

43.   Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs, as if fully rewritten here.

44.   Once the debt on the Account was discharged in Plaintiff's Bankruptcy Case, the debt became uncollectible due to the discharge injunction.   This also ended any right Defendant had to obtain Plaintiff's consumer report from TransUnion.   After filing bankruptcy, Plaintiff never sought credit from Defendant, nor did she authorize Defendant to pull her credit reports from the CRAs.

45.   The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

> (f) Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

46.   Section 1681b(a)(3) of the FCRA lists the all-inclusive purposes for which a consumer report can be obtained and, in relevant part, states:

(a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

　　　　　***

　　(3) To a person which it has reason to believe –

　　　　(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

　　　　　***

　　　　(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

　　　　(F) otherwise has a legitimate business need for the information-

　　　　　* * *

　(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

47.　　Section 1681a(d)(1) defines a consumer report as:

(d) CONSUMER REPORT. –

　　(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

　　　　(A) credit or insurance to be used primarily for personal, family, or household purposes;

　　　　(B) employment purposes; or

　　　　(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

48.　　After Plaintiff received her bankruptcy discharge, Defendant requested, obtained and used Plaintiff's consumer report from TransUnion without a permissible purpose as established by the FCRA.

49.     Post-discharge, Plaintiff never sought credit from Defendant or engaged in any business dealings with Defendant that would have provided Defendant with a legal reason to pull her credit from the CRAs.   Thus, Defendant's obvious and only purpose for obtaining and using Plaintiff's consumer report from TransUnion post-discharge, as it did, was to impermissibly gather information about Plaintiff in furtherance of its illegal, post-discharge collection attempts on the subject discharged debt for the Account.   If Defendant denies this was its purpose, then it illegally obtained and used Plaintiff's personal and financial information, which is protected by law, and used it for an impermissible reason, as there was no permissible reason during the times at issue.

50.     In order to gain access to Plaintiff's credit file and/or consumer report and confidential information therein post-discharge, and to have information about these account reviews reported on Plaintiff's TransUnion credit report for her and other third parties to see to deceptively make Plaintiff or other third parties believe the debt on the Account was still due and owing from Plaintiff, Defendant reported false information to TransUnion that its purpose for accessing Plaintiff's consumer report or credit file was ostensibly for an account review or other business transaction.   At all relevant times, however, the debt on the Account had been discharged and the collateral surrendered.   Thus, there was no legitimate reason for Defendant to access or review Plaintiff's credit file from any of the CRAs and obtain and use her consumer reports impermissibly.

51.     At all relevant times, Defendant was trying to gain confidential information about Plaintiff in furtherance of its *in personam* collection efforts on the subject discharged debt.   If it denies this was its purpose, then Defendant was trying to gain access to Plaintiff's confidential,

personal and financial information which is protected from access without a permissible purpose by law.

52.     If Defendant represented to TransUnion that it intended to use the information in Plaintiff's consumer report in connection with a valuation of, or an assessment of the credit or prepayment risks associated with an existing credit obligation on the Account or by Plaintiff, that would have been false, since there was no debtor-creditor relationship between Plaintiff and Defendant post-discharge.

53.     When Defendant obtained Plaintiff's consumer reports post-discharge from TransUnion, it had actual knowledge Plaintiff had not requested new credit from it post-discharge or initiated a business transaction with it at any time since filing her Bankruptcy Case and it knew Plaintiff no longer had an existing credit obligation with it post-discharge. Thus, Defendant had actual knowledge it did not have a permissible purpose to access, obtain and use Plaintiff's consumer reports and confidential information therein from the CRAs as it did during the times at issue.

54.     For Defendant to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

55.     After a reasonable time to conduct discovery, Plaintiff believes she can prove Defendant used false pretenses, namely the representation it intended to use Plaintiff's consumer report for a permissible purpose, when it had no permissible purpose under the FCRA, in order to obtain and use Plaintiff's confidential, personal and financial information for the illegal purpose of attempting to collect on the subject discharged debt.

56.     After a reasonable time to conduct discovery, Plaintiff believes she can prove Defendant is unwilling or unable to prevent its system(s) or agents from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having her private, personal and financial information disclosed without her consent, authorization or other legal justification.

57.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show Defendant promised through its subscriber agreements or contracts with subject CRA(s) to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of conducting the inquires at issue in furtherance of its attempts to collect the debt, including, but not limited to, Plaintiff's consumer report(s) at issue.

58.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show that despite Defendant receiving dozens, if not hundreds, of account disputes complaining about it taking post-discharge impermissible account review inquiries and credit pulls related accounts discharged in bankruptcy and discharged consumer debtors, Defendant has intentionally and knowingly not corrected its policies of furnishing false information to the CRAs to impermissibly obtain and use discharged consumer's consumer reports, including, but not limited to Plaintiff's consumer report(s) at issue.

59.     As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, entitling her to an award of actual damages in an amount

to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

60.     The injuries suffered by Plaintiff as a result of Defendant impermissibly obtaining and using her consumer report(s) were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).   Since Defendant's impermissible acquisition and use of Plaintiff's consumer report will have a continuing adverse impact on Plaintiff and the violations may be ongoing in nature, Defendant is liable for any and all future harm suffered by Plaintiff as a result of this actionable conduct.

## VI.   GROUNDS FOR RELIEF - COUNT II

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

61.     Plaintiff repeats and re-alleges the facts recited in all paragraphs above, as if fully rewritten here.

62.     Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

  a)  Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from threatening to take an action prohibited by law; inasmuch as the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; inasmuch as the FCRA prohibits obtaining and using a consumer report without a permissible purpose; and inasmuch as the common law protects Plaintiff's privacy rights, Defendant's actions at issue of sending Plaintiff post-discharge statements and correspondences, making collection calls to Plaintiff, and impermissibly obtaining Plaintiff's consumer reports from TransUnion, were also violations of the TDCA, as they were threats of further illegal and harassing collections and contacts from Defendant to Plaintiff in violation of the TDCA;

  b)  Tex. Fin. Code § 392.304(a)(3), which prohibits representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer; inasmuch as Defendant was soliciting Plaintiff to send Defendant her personal,

private and financial information by sending her the assumption packet long after Plaintiff had surrendered and vacated the Property, Defendant made false representations and solicitations to Plaintiff to obtain her personal and confidential information to further Defendant's illegal post-discharge collection efforts on the Account(s);

c)   Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of the debt; Defendant misrepresented information to Plaintiff and third-parties through the credit reporting about Defendant's post-discharge account review inquiries on Plaintiff's TransUnion credit report at issue, to make it appear that the Account was open, due and collectible and Defendant had a right to analyze the Account, as well as the billing statements and correspondences at issue, misrepresenting the debt was due and payable in a stated amount by a specified due date, or through representations that Plaintiff was responsible to take an action to benefit Defendant financially on the Account, these were misrepresentations of the character, extent or amount of the subject debt in violation of the TDCA; and

d)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a-c).  Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff.

63.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions at issue make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA.  Also, Plaintiff's injuries resulted from Defendant's malice, and/or actual fraud which entitle Plaintiff to punitive damages.

64.     Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII.   GROUNDS FOR RELIEF - COUNT III

### INVASION OF PRIVACY

65.     Plaintiff restates, realleges and reiterates all the facts contained in the paragraphs above, as if stated herein in their entirety.

66.     When Defendant impermissibly accessed Plaintiff's TransUnion credit file and obtained her confidential personal and financial information in her consumer report post-discharge, as stated hereinabove, Defendant's actions constituted an invasion of Plaintiff's private affairs and privacy rights.   These invasions were ones that would be highly offensive to a reasonable person because confidential and sensitive, personal and financial information is included in a consumer report.   Such wrongful acts caused injury to Plaintiff.

67.     When Defendant made harassing and illegal contacts with Plaintiff by sending her post-discharge written letters, notices and statements, as well as making post-discharge collection calls to her, sending her text messages, demanding payment or actions to coerce payment of the discharged debt, these contacts constituted invasions of Plaintiff's privacy. These invasions were ones that would be highly offensive to a reasonable person because Defendant was forbidden to contact Plaintiff post-discharge regarding the subject discharged debt and Account, and these invasive contacts even continued after the Property was foreclosed, further adding to Plaintiff's privacy expectations of not being contacted directly by Defendant. Such wrongful acts caused injury to Plaintiff, which resulted in her extreme emotional anguish, loss of time and inconvenience.

68.     Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII.   GROUNDS FOR RELIEF - COUNT IV

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

69.     Plaintiff restates, realleges and reiterates all the facts contained in the paragraphs above, as if stated herein in their entirety.

70.     At all times material to this proceeding, Defendant had actual knowledge about Plaintiff's Bankruptcy Case and the discharge of the debt at issue.

71.     Defendant failed to cease its debt collection activity on the Account and debt at issue when it knew Plaintiff filed for bankruptcy protection and received a discharge on the debt for the Account.   This is evidenced by Defendant sending Plaintiff the correspondences, notices and statements at issue, making the post-discharge collection calls to Plaintiff, sending text messages and impermissibly obtaining and using Plaintiff's confidential and personal information from the CRA(s) post-discharge.

72.     Defendant continued its prohibited debt collection activity and harassing of Plaintiff by trying to coerce payment of the discharged debt from her or coercing her to take actions to benefit Defendant financially, even after the debt was discharged in her Bankruptcy Case, as evidenced by all of Defendant's collection activity at issue.

73.     The totality of Defendant's pre-discharge actions at issue and the individual actions constitute violations the discharge injunction and actionable under 11 U.S.C. §524(a)(1)-(3).

74.     The facts and background stated above demonstrate that Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court as they concern the bankruptcy filed by Plaintiff.   With this prima facie showing, the duty is on Defendant to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.   Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on her claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the filing and pendency of

Plaintiff's Bankruptcy Case resulting in the automatic stay, and the Bankruptcy Court granting the discharge in Plaintiff's Bankruptcy Case, including, but not limited to, the discharge of the subject debt on the Account, resulting in the discharge injunction.

75.     Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for its conduct and actions. Any allegation of a good faith exception should not be allowed.

76.     Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. § 524(a)(2) which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived;…", regarding all of Defendant's harassing and prohibited collection actions at issue it took post-discharge.

77.     No exceptions exist under 11 U.S.C. § 524 or any other provision of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the Discharge injunction, as stated above.

78.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint.   None of the aforementioned has been approved by the Court here, and no waiver of the automatic stay, orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

79.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court.   Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law.

It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.   Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant.   No allegation of a mitigation as a defense should be allowed.

80.   Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant, for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. § 524, and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX.   RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

81.   After a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type, were for the benefit of Defendant and such actions were in the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on both Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

## X.   DAMAGES

82.   In addition to any damages previously stated hereinabove, Defendant's actions at issue brought Plaintiff back to her negative emotions and anguish of having to file and go through bankruptcy and caused Plaintiff new fears, stress, worry, frustration, uncertainty, anger,

fear, defensiveness and anxiety to such a degree, affecting her physical well-being and day-to-day life.

83.     Plaintiff's level of emotional distress and mental anguish and harm has increased and increases knowing Defendant has systematically been sending her billing statements, letters and notices on the Account; making collection calls to her regarding the Account; and impermissibly obtaining and using her consumer report from TransUnion.  As Defendant has refused to cease its collection efforts despite Plaintiff's demand that they honor the discharge, Plaintiff became increasingly concerned that something went wrong with the bankruptcy process and that she may owe the debt which has caused her further anxiety and fear of what may happen to her if she does not pay it.   As a result of Defendant's conduct Plaintiff has suffered insomnia, stress eating, headaches, and has exacerbated feelings of depression.

84.     The conduct of Defendant at issue has proximately caused Plaintiff past and future monetary loss with regard to actions she has had to take investigating her claims at bar, making copies of credit reports and documents, expenses incurred related thereto and related to bringing this lawsuit and trying to get Defendant to not contact her or try to collect on the discharged debt; emotional anguish and a discernable injury to Plaintiff's emotional and physical state and other damages, evidence for which will be presented to the jury.

85.     At all relevant times, Defendant knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer legally collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to attempt to collect and deceptively collect on the subject discharged debt after the discharge of the subject debt in her Bankruptcy Case, at which

time there was no debtor-creditor relationship between the parties and Defendant had no right to engage in its actions at issue.

86.     After a reasonable time for discovery, Plaintiff believes she will be able to show that despite Defendant receiving dozens, if not hundreds, of disputes complaining that it was illegally attempting to collect on debts discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of engaging in these actions.

87.     After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

88.     After a reasonable time for discovery, Plaintiff believes she will be able to show Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to attempting to knowingly collect on discharged accounts in accordance with its policies and procedures, and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.   Moreover, Plaintiff's injuries resulted from Defendant's malice and/or actual fraud, which entitle Plaintiff to punitive damages.

89.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.   The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

90.    Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Marquaisa Denise McClendon, prays the Court will:

A.    Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees as legally provided for violating: the FCRA; the TDCA; her common law privacy rights; and the bankruptcy discharge injunction;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

**COUNSEL FOR PLAINTIFF**

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

November 19, 2020                          */s/ James J. Manchee*
Date                                                     James J. Manchee